**DINO & SONS REALTY CORPORATION, Petitioner–Cross–Respondent,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent–Cross–Petitioner.**

**Docket Nos. 01–4158, 01–4188.**

United States Court of Appeals, Second Circuit.

June 18, 2002.

Tony Berman, Berman, Paley, Goldstein & Kannry, LLP, New York, NY, for Petitioner.

Frederick C. Havard, Supervisory Attorney; Christopher W. Young, Attorney, of counsel; Arthur F. Rosenfeld, General Counsel, John E. Higgins, Jr., Deputy General Counsel, John H. Ferguson, Associate General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, on the brief, National Labor Relations Board, Washington, DC, for Appellee.

Present MINER CABRANES and POOLER, Circuit Judges.

### SUMMARY ORDER

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED, the cross-petition for enforcement is GRANTED, and the petition for summary enforcement is GRANTED.

This case arises out of a 1996 strike by Local 32B–32J, Service Employees International Union (the "Union") against the Dino & Sons Realty Corporation (the "Company") at a building it owns and operates at 220 Fifth Avenue, New York, NY. The action was part of a city-wide strike by the Union against all members of the Real Estate Advisory Board of New

York City ("REAB"), with which the Union had a collective bargaining agreement covering cleaners, elevator operators and starters, and guards.

The Company petitions for review and the National Labor Relations Board ("NLRB" or "Board") cross-petitions for enforcement of a Decision and Order issued on February 25, 2000, adopting the rulings, findings, conclusions and recommended order of Administrative Law Judge Jesse Kleiman. *See Dino & Sons Realty Corporation & Najmal Upadye,* Case 2–CA–29306, 2000 WL 231786 (N.L.R.B. Feb.25, 2000). The Board found that the Company violated Section 8(a)(1) of the National Labor Relations Act (the "Act") (29 U.S.C. § 158(a)(1)) by telling employees that they had lost their jobs and would not be rehired because they had engaged in a strike against the company, and that it violated Section 8(a)(1) and (3) of the Act (29 U.S.C. § 158(a)(1) and (3)) by discharging and refusing to reinstate the striking employees. The Board's order requires the Company to, *inter alia,* offer union members full reinstatement to their former positions or substantially equivalent ones and to make them whole for any loss of wages and benefits they may have suffered as a result of the Company's violations of the Act.

The NLRB also petitions for summary enforcement of a Supplemental Decision and Order, issued August 9, 2001, which requires the Company to pay specific backpay awards to the following employees: Najmal Upadye ($19,378); Gary Francis ($ 9,766); Will Hardman ($31,386); Lucy Restrepo ($27,062); Luis Acevedo ($13,328); Cecilia Castano ($30,464); Maria Serrano ($19,816); and Richard Finnerty ($10,586). *See generally Dino & Sons Realty Corporation & Najmal Upadye,* Case 2–CA–29306, 2001 WL 1598739 (N.L.R.B. Div. of Judges, June 22, 2001).

## I.

The Board's decision was based on the following testimony, which was adduced in proceedings before ALJ Kleiman:

As a member of REAB, the Company was party to the collective-bargaining agreement with the Union, which covered eight of the fifteen employees at the building: Upadye, Francis, Hardman, Restrepo, Acevedo, Castano, Serrano, and Finnerty. Before expiration of that agreement on December 31, 1995, the Company lawfully withdrew from REAB and terminated REAB's authorization to bargain on the Company's behalf. Union member Hardman testified that, at about that same time, Building Superintendent Rudy Vera told him that, after 1995, there would be no more union in the building.

After the REAB agreement expired, the Union called a city-wide strike that commenced on January 4, 1996. On that date, the eight members of the Union employed at 220 Fifth Avenue went on strike and commenced daily picketing in front of the building. Union Business Agent Jolm Kalnberg named Francis as the strike captain of the employees. As strike captain, Francis was responsible for taking attendance at the picket line and providing the striking employees with strike-related information.

On February 4, 1996, REAB and the Union reached agreement on a successor collective-bargaining agreement and the Union directed its membership to return to work. Francis testified that, on the following day, he reported for work. As he approached the Fifth Avenue building, Building Superintendent Vera came outside to meet him. Francis told Vera, "I'm here to go back to work." Vera replied, "[Building Manager] Homero [Ferronato] said that none of you can go back to work."

Vera then approached employees Serrano and Castano, who were also outside. Speaking in Spanish, Vera told them, "[T]he strike has ended, [but] it didn't end for [you] because [you aren't] allowed to go in to work."

After this conversation, Francis waited for the rest of the strikers. Eventually, all but Finnerty arrived. Francis told them that Ferronato had told Vera not to allow the strikers back in the building.

Later that day, seven of the Union members went to the Union's office and met with Business Agent Kalnberg. Kalnberg testified that the union members told him that Vera, on Ferronato's instructions, would not allow them to return to work. Kalnberg telephoned Ferronato and asked him why the strikers were not being allowed to return to work. Ferronato responded that the Company did not want these employees back to work "because their wages were too high and their benefits were too high." Kalnberg told the Union members to continue with the strike and picketing; they complied.

Upadye testified that, later that week, he saw Company Vice–President Rocco Tomassetti while picketing the building and asked him for his job back. Tomassetti replied, according to Upadye, that "no strikers are allowed in the building, no strikers are going to be hired back." The following week, Upadye again asked Tomassetti why he was not being rehired. Tomassetti replied that the Company was not rehiring any strikers. Upadye told his fellow strikers about his conversations with Tomassetti.

Ferronato testified that, on March 13, he and Joseph S. Rosenthal, the Company's counsel, met with Kalnberg and Ira Strum, the Union's counsel, to negotiate a new collective-bargaining agreement. The Union asked the Company to sign the same agreement as the one signed by REAB.

The Company offered a counter proposal, which was rejected by the Union. At this meeting, the Company advised the Union that the striking employees had been permanently replaced but that should they wish to return to work, the Company would employ them if there were positions available. No further meetings were held between the Company and the Union.

Hardman testified that, on July 11, he telephoned Company President Dino Tomassetti and asked to be rehired. Tomassetti replied, according to Hardman, that Hardman lost his job because he went out on strike and he would not be getting his job back.

None of the strikers has been rehired.

## II.

We review the Board's legal conclusions to ensure that they have a reasonable basis in law, affording the Board "a degree of legal leeway." *NLRB v. Town & Country Elec., Inc.*, 516 U.S. 85, 89–90, 116 S.Ct. 450, 133 L.Ed.2d 371 (1995). Factual findings of the Board will not be disturbed if they are supported by substantial evidence in light of the record as a whole. *See* 29 U.S.C. § 160(e)-(f); *Electrical Contractors, Inc. v. NLRB*, 245 F.3d 109, 116 (2d Cir. 2001). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotations omitted). Put another way, we must determine "whether the supporting evidence, even if not preponderating in this court's view, nevertheless provides a sufficient basis for the Board's decision." *NLRB v. Interboro Contractors Inc.*, 388 F.2d 495, 499 (2d Cir.1967).

■ In this case, the Company does not claim that the ALJ committed errors of law. Rather, it contends that the ALJ

erred "in the application of the law to the convoluted facts of this case." Pet. Br. at 2. Specifically, it argues that the ALJ erred in finding (1) that the striking employees returned to work on February 5, 1996, and were discharged on that date by the Company; (2) that any effort by the union members to unconditionally return to work would have been futile after February 5, 1996; and (3) that the striking employees had not been permanently replaced.

With respect to (1)—the discharge of the employees—the Company claims that the union members "misunderstood" Vera's comments on February 5, and that Vera did not intend to bar the strikers from returning to work. The Company did not, however, call Vera to explain his comments, and the testimony of Francis and Serrano amply supports the ALJ's finding that Vera told the strikers that they would not be permitted to return to work. That finding is further supported by Kalnberg's testimony regarding the February 5 telephone conversation with Ferronato.

With respect to (2)—futility—the Company contends that the ALJ's findings were erroneous because there was no evidence that individual strikers subjectively believed that it would have been futile for them to apply for reinstatement. Where, however, as here, employees are wrongfully discharged in the course of a strike, the Board properly places the burden on the employer to show that an application for reinstatement would *not* have been futile. *Abilities and Goodwill, Inc. and Abilities and Goodwill Ass'n of Prof'l Employees*, 241 NLRB 27 (1979), *enforcement denied on other grounds*, 612 F.2d 6 (1st Cir. 1979); *Garrett R.R. Car & Equip., Inc. v. NLRB*, 683 F.2d 731, 741 (3d Cir.1982); *NLRB. v. Lyon & Ryan Ford, Inc.*, 647 F.2d 745, 756 (7th Cir.1981). An employer can meet this burden by showing that it

offered the discharged employees reinstatement or that the employees would have rejected an offer of reinstatement had it been offered. *See Garrett R.R. Car*, 683 F.2d at 742; *Lyon & Ryan*, 647 F.2d at 756.

In this case, the Company did not meet its burden of showing that an application for reinstatement would not have been futile. Accordingly, the ALJ's finding that it would have been futile for the union employees to unconditionally return to work was not in error.

■ With respect to (3)—the alleged permanent replacement of the striking workers—the Company relies on the testimony of Ferronato, who did the hiring. The ALJ, however, rejected Ferronato's testimony as not credible. *See Dino & Sons*, 2000 WL 231786, at *6, *11–*12. We will not disturb an ALJ's credibility determinations unless the determinations are "incredible or flatly contradicted by undisputed documentary testimony." *NLRB v. Katz's Delicatessen of Houston Street, Inc.*, 80 F.3d 755, 763 (2d Cir.1996).

The Company points to payroll records of the allegedly permanent replacement workers, arguing that they corroborate Ferronato's testimony. Those records, however, merely show that the replacement workers were paid, *not* that they were "permanent" or that they were hired to replace the union employees. Accordingly, there is no basis to disturb the ALJ's findings with respect to the alleged permanent replacement of the striking workers.

We have considered the Company's remaining arguments, and find them to be without merit. The Company's petition for review is denied, the NLRB's cross-petition for enforcement is granted, and

the NLRB's petition for summary enforcement is granted.